**FILED**

NOV 2 1 2007
Nov. 21, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

*JH*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

THE NORTHERN LEAGUE, INC.,          )
                                     )

       Plaintiff,          )

    v.          )

JEFFREY EARL GIDNEY, and P. DANIEL          )
ORLICH          )

       Defendants.          )

**07CV6585**
**JUDGE DER-YEGHIAYAN**
**MAG.JUDGE MASON**

## NOTICE OF REMOVAL OF CAUSE TO THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

      Defendant, P. Daniel Orlich, through his attorneys, Staes & Scallan, P.C., and pursuant to

28 U.S.C. §§ 1332, 1441, and 1446, hereby provides notice of his removal of this cause for the

following reasons:

      1.     On October 25, 2007, Plaintiff filed in the Circuit Court of Cook County, Illinois

a civil action under case number 07 CH 30842, in which The Northern League, Inc. is the

plaintiff and Jeffrey Earl Gidney and P. Daniel Orlich are defendants.

      2.     The suit filed by Plaintiff in the Illinois state court seeks declaratory judgment that

Mr. Orlich breached his agreement with Plaintiff and declaring, *inter alia*, that Mr. Orlich owes it

money damages and is obligated to turn over rights to run a baseball team in the areas currently

controlled by Mr. Orlich.

      3.     Plaintiff seeks more than $2 million from defendants for alleged liquidated and

unliquidated damages.

4.      Mr. Orlich states that the above lawsuit involves a controversy with complete

diversity of citizenship between citizens of different states, and Mr. Orlich affirmatively states further:

(a)     Plaintiff was at the commencement of this action, and is now, a South Dakota
        corporation. Plaintiff maintains offices in Minneapolis, Minnesota and Soquel,
        California.

(b)     Defendant Jeffrey Earl Gidney is a resident of Winnipeg, Manitoba, Canada.

(c)     Defendant P. Daniel Orlich is a resident of Riviera Beach, Florida.

5.      This matter involves a controversy between a corporation incorporated in South

Dakota with offices in Minnesota and California and two individuals, one of whom lives in

Florida while the other lives in Winnipeg, Manitoba, Canada and the amount in controversy

exceeds $75,000.00. Accordingly, the United States District Court for the Northern District of

Illinois has jurisdiction over this lawsuit pursuant to 28 U.S.C. §1332.

6.      This Notice of Removal is timely filed within thirty (30) days after Mr. Orlich's

receipt of the complaint. This case remains fully removable pursuant to the statutory provisions

and for the reasons cited herein.

7.      Attached hereto and made a part hereof are copies of the following documents

filed by Plaintiff in the Circuit Court of Cook County, Illinois under case number 07 CH 30842,

and include all documents known to Mr. Orlich:

•       Plaintiff's Complaint For Declaratory Judgement And Other Relief (Exhibit 1);
        and

•       Summons directed to Mr. Orlich (Exhibit 2).

Mr. Orlich also attaches a copy of the docket from the Clerk of the Circuit Court of Cook

County, which does not reflect any further pleadings or filings. (See Exhibit 3).

2

8.     Pursuant to 28 U.S.C. § 1446(d), this Notice of Removal is being filed promptly

with the Court from which the action was removed (the Circuit Court of Cook County), and is

being served on all adverse parties (William Goldberg of Seyfarth Shaw).

WHEREFORE, Defendant P. Daniel Orlich prays that he may cause removal of this

action from the Circuit Court of Cook County, Illinois.

Respectfully submitted,

ANDREW STAES

STEPHEN SCALLAN

JOSHUA J. WHITESIDE

STAES & SCALLAN, P.C.
111 West Washington Street
Suite 1631
Chicago, Illinois 60602
(312) 201-8969

## CERTIFICATE OF SERVICE

I, Stephen Scallan, hereby certify that I have caused a copy of the foregoing Notice Of Removal Of Cause To The United States District Court For The Northern District Of Illinois to be served upon Mr. William Goldberg, Seyfarth Shaw, 131 S. Dearborn Street, Suite #2400, Chicago Illinois via messenger on November 21, 2007.


STEPHEN SCALLAN

EXHIBIT
1

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT, CHANCERY DIVISION

THE NORTHERN LEAGUE, INC.,        )
                                  )
            Plaintiff,            )
                                  )
    v.                            )        Case No.
                                  )
JEFFREY EARL GIDNEY and P. DANIEL )
ORLICH                            )        07 CH 30842
                                  )
            Defendants.           )
                                  )

## COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

Plaintiff Northern League, Inc. ("Northern League") by its attorneys, Seyfarth Shaw LLP

alleges the following as its complaint against Jeffrey Earl Gidney ("Gidney"), owner of the

Calgary Vipers and P. Daniel Orlich ("Orlich"), owner of the Edmonton Cracker-Cats,

Defendants.

### Nature of the Dispute

1.      Actual controversies exists regarding agreements between plaintiff and defendants

arising from defendants' decisions that the baseball teams that they own would not play in the

Northern League in the 2008 season. The controversies arise from the following agreements:

    A.      The Constitution of the Northern League. (Exhibit A)

    B.      Northern League Expansion Rights and Stock Purchase Agreement

between the Northern League and Gidney dated February 8, 2005. (Exhibit B)

    C.      Northern League Expansion Rights and Stock Purchase Agreement dated

April 10, 2004 between P. Daniel Orlich and the Northern League. (Exhibit C)

    D.      Settlement and Mutual Release between P. Daniel Orlich and the Northern

League and its other members dated December 8, 2006. (Exhibit D)

CH3 1121490.1

EXHIBIT
1

E.     Agreement of Eight Northern League Teams effective October 7, 2005. (Exhibit E)

2.     The dispute stems from the defendants voluntary termination of their affiliation with the Northern League and their breaches of the above agreements, their termination of their affiliation with the Northern League by their refusal to meet their contractual obligations in regard to the 2008 schedule and by their subsequent affiliation with the Golden League.

<u>Parties</u>

3.     The Northern League, a South Dakota corporation organized in February, 1992, is in the business of operating an independent baseball league which consisted of eight teams prior to the departure of the teams owned by Gidney and Orlich. After the departure of those teams, the league now consists of six teams which are located in Joliet, Schaumburg, Gary, Fargo (North Dakota), Kansas City (Kansas) and Winnipeg (Canada).

4.     Defendant Gidney is the owner of the Calgary Vipers, which was the Northern League team based in Calgary, Alberta, Canada.

5.     Defendant Orlich is the owner of the Edmonton Cracker-Cats, which was the Northern League team based in Edmonton Alberta, Canada.

<u>Jurisdiction and Venue</u>

6.     Jurisdiction is proper in Cook County because acts out of which this action arises took place in Cook County, Illinois.

7.     Venue is proper in Cook County because acts out of which this action arises took place in Cook County.

<u>The Agreements</u>

8.     The Northern League constitution contains provisions governing termination of membership in the League. Paragraph 4 of the constitution governs voluntary termination of

membership; it provides that, if a club operating a membership in the league shall notify the Commissioner of the League in writing that it will not operate its membership during the following year, the Commissioner of the League shall place the membership with the other parties in another city approved by the Commissioner and the Board of Directors. In that event, title to all players on the roster of the terminating club shall rest in the League from the date of notice of termination.

9.    Paragraphs 6 and 7 of the Constitution provide for termination of membership for "failure to pay any all financial indebtness owed and due by a member club (Paragraph 6(b)); for "failing or refusing to fulfill its contract obligations". (Paragraph 7(e); or for "willfully violating any provisions of this constitution", Paragraph 7(f)).

10.    In October 2005, following the notice from four Northern League teams that they were terminating their membership in the Northern League, the eight remaining teams, including defendants' teams, entered into an agreement providing for liquidated damages in the sum of $2 million, or the current membership expansion fee, whichever is greater, to be paid by any team "that voluntarily terminates it membership in the Northern League for any reason". (Exhibit E) That agreement was signed by the owners of all eight teams, including the defendants.

11.    The Northern League Expansion Rights and Stock Agreement between the league and Gidney provided for the purchase by Gidney of one thousand shares of common stock in the league and expansion rights in Calgary for a total amount of $800,000. (Exhibit B) Gidney also agreed that he would pay $50,000 to the League annually in or before April to defray travel costs of league teams. The agreement also provided for the posting of a $150,000 letter of credit to ensure Gidney's payment of his obligations to the league.

3

12.     The Expansion Rights and Stock Purchase Agreement between the league and Orlich provided for the purchase of 1000 shares of stock and expansion rights in Edmonton for a total payment of $1 million. Orlich also agreed to pay the travel subsidy $50,000 to the league for travel expenses. (Exhibit B, Paragraph 4).

13.     In a Settlement and Mutual Release Agreement dated December 8, 2006, Orlich and the league entered into a Settlement Agreement, (Exhibit D) with respect to the interpretation of the Purchase Agreement (Exhibit B). That Agreement provided for various payments among the parties. Then, it provided that all the parties agree "that they have continuing obligations to each other and the league and that these obligations require that each follow the rules as described in the league's By Laws and Constitution and adheres to their agreements going forward..."

### Defendants' Conduct

14.     Beginning during the 2007 season, defendants each made repeated statements in the press and in oral and written communication with the league and members of the league indicating their intention to withdraw from the League or not conduct play in 2008. Further, notwithstanding repeated attempts by the League and other members to verify that each defendant intended to play in 2008, each defendant failed to provide adequate assurances of its intention to participate and fulfill the 2008 schedule, which was being prepared. Moreover, Edmonton failed to pay the travel subsidy for 2007.

15.     Following the conclusion of the season, the league and representatives of other members of the league proposed that each defendant provide a letter of credit to assure performance of his obligations and to secure any loss the Northern League would suffer if either team failed to perform the 2008 schedule.

4

16.    These arrangements were discussed and modified in meetings on October 4-5, 2007. However, defendants left the meetings and never responded to the proposals.

17.    On or about October 15, 2007, an attorney for defendants advised an attorney for the League that defendants teams should not be included in the 2008 season schedule.

18.    On or about October 23, 2007, Gidney announced at a press conference that he was moving his Calgary Vipers to the Golden League, another independent league.

19.    On or about October 24, 2007, Orlich announced in a press release that the Edmonton Cracker-Cats had joined the Golden League.

20.    Both defendants have threatened litigation against the league.

21.    By reason of the conduct alleged above, each of the defendants has voluntarily left the League.

22.    Further, by reason of said conduct, each defendant has violated his respective Stock Purchase Agreement with the League and the League's Constitution. The League has performed its obligations under those agreements.

WHEREFORE, plaintiff prays that the Court enter an order as follows:

a)    Declare that each defendant has voluntarily terminated its membership in the Northern League, so that each defendant is obligated to pay $2 million (U.S.) to the other members of the Northern League pursuant to the Agreement of Eight.

b)    Declare that each defendant has breached the constitution by failing to comply with the voluntary termination provisions of the constitution.

5

c)   Declare that each defendant has breached the constitution and his respective purchase and expansion agreements by moving his team to the Golden League.

d)   Declare that each defendant is obligated to turn over to the League its right to operate a team in the area in which it operated a Northern League team and to turn over the players' contracts, team names, logos, all other intellectual property and trademarks relating to each team to the League, and to surrender his stock in the League.

e)   Declare that the League is entitled to collect on the letters of credit provided for in Paragraph 2 of the constitution.

f)   Award damages for the losses caused by the defendants.

g)   Grant such other and further relief as the court deems appropriate.

DATED: October 25, 2007

Respectfully submitted,

SEYFARTH SHAW LLP

By _____
One of Its Attorneys

William I. Goldberg
P. Shawn Wood
Seyfarth Shaw LLP
131 S. Dearborn Street – Suite 2400
Chicago, IL  60603-5577
(312) 460-5000
Fax: (312) 460-7000
Firm No.: 90747

## NORTHERN LEAGUE CONSTITUTION

### ARTICLE I. NAME

This organization shall be called The Northern League, Inc.

### ARTICLE II. OBJECTS

The objects of this League shall be:

(a)  To perpetuate baseball in the Upper Midwest of the United States and the Southern part of Canada and to surround it with such safeguards as to warrant absolute public confidence in its integrity and methods.

(b)  To protect and promote the mutual interest of professional baseball clubs, professional baseball players, umpires and members of The Northern League.

(c)  To establish and regulate regular-season and championship baseball in The Northern League.

### ARTICLE III. MEMBERSHIP

1.  <u>Location.</u>  The League shall consist of not less than four (4) baseball clubs and not more than twelve (12) clubs. The clubs shall consist of members of The Northern League whose ownership and city location have been approved by the Commissioner of The Northern League. No member shall change its location to any other city unless authorized by the Commissioner of The Northern League and a majority of the Board of Directors.

2.  <u>Letter of Credit.</u>  Each member of the League must deposit with the Commissioner, not later than October 1st, a letter of credit drawn upon a financial institution approved by the League in the amount of $150,000 guaranteeing the payment of any obligation due by the club to its players, the League, vendors and the general public and as a guarantee against the violation of any provisions of this Constitution, rules, or contracts made in respect to its operation. The letter of credit shall remain in full force and effect during the club's operation as a member of the League. The requirement may be waived by the League Commissioner after evidence of proper operation and timely payment of obligations.

3.  <u>Vacancy in League Membership.</u>  In the event a member of the league, during the baseball season, shall for any reason be unable or unwilling to continue with the satisfactory operation of the club, the Commissioner of the League shall have the authority to immediately take possession of the membership and players of said club and to transfer said membership and players, together with all the club's assets to any corporation, partnership or individual that he approves and will assume the operation of the club and discharge it's obligations.



## NORTHERN LEAGUE CONSTITUTION, page two

4.  Voluntary Termination.  If any club operating a membership in the League shall notify the Commissioner of the League in writing it will not operate its membership during the following season, then the Commissioner of the League shall place the membership with other parties or in another city approved by the Commissioner and Board of Directors.  Title to all players on the roster of the terminating club shall rest in the League from the date of notice of termination.

5.  Membership Assignment.  The League has the authority to request in writing all facts and details of any proposed sale of membership herein, and if such request is made, the assignee and assignor shall furnish to the League such information before approval of the sale is considered.

6.  Automatic Termination of Membership.

(a)    Each member shall notify in writing to the Commissioner of the League by October 1st of each year the financial status of said club.

(b)    The failure to pay any and all financial indebtedness owed and due by a member club shall constitute grounds for termination of this membership.  Termination proceedings shall commence within fifteen (15) days of notice of such indebtedness.

7.  Terminating Membership.  Membership in the League may be terminated for the following reasons:

(a)    By resignation of any member duly accepted by the Commissioner of the League.

(b)    By willful failure to present its club at a time and a place agreed upon to play a championship game.

(c)    By allowing open betting or pool selling upon its premises or any building owned or occupied by it.

(d)    By offering, agreeing, conspiring or attempting to lose any game of baseball or failure to immediately expel from its team any player who shall be proven guilty of offering, agreeing, conspiring or attempting to lose any game of baseball or of being interested in any pool or wager thereon.

(e)    By failing or refusing to fulfill its contract obligations.

(f)    By willfully violating any provision of this constitution.

(g)    By disbanding its organization or team during the championship season or at any time during the life of its membership.

NORTHERN LEAGUE CONSTITUTION, page three

8.   Forfeiture or Alternative.   To carry into effect paragraph 7 of this Article, the following procedure shall be followed:

(a)   A hearing shall be held before the Commissioner of the League.

(b)   Within ten (10) days of such hearing a member may appeal to a committee composed of the remaining members of the League who, by a vote of two-thirds of the remaining membership, overrule the Commissioner.

(c)   In lieu of forfeiture of membership, the League may impose a fine or other penalty upon the offending member.

(d)   Any club failing to complete any season during the life of this contract, or which abandons its territory, shall forfeit all rights or claim to the membership it held at the time of such failure or abandonment, together with said club's interest in the contracts of all players under contract to it, all of said interests vesting immediately in The Northern League.

9.   Stockholders and Officers of Member Clubs.   By March 31st of each year, all member clubs of The Northern League must submit to the Commissioner of the League a complete list of stockholders, officers and other persons having a financial interest in each club.  Changes thereafter made must be reported within ten (10) days after such change.  The club's failing to make such a report on a timely basis may be subject to such fine or penalty as the Commissioner of the League may deem to be just and proper.

10.  Transfer of Stock Within Members Clubs.

(a)   The League Commissioner shall be informed of any internal transfer of stock which must be approved by the League Commissioner.  When an existing member club in The Northern League wishes to sell all or any portion of its stock to a third party, the club shall submit the name of the buyer and the number of shares they wish to purchase to the League Commissioner for approval.  Approved internal transfer or sale to a third party shall result in a 10% commission to the league and after January 1, 1995 and until January 1, 2001 this commission shall be paid to the league organizer.

(b)   The League Commissioner shall reserve the right to also request any additional information that may be necessary regarding the internal transfer of stock.

11. Expansion Clubs. Expansion must be approved by the Commissioner of the League and a majority of the Board of Directors. When an expansion club wishes to join The Northern League the following must be submitted to the League Commissioner:

(a)    A list of all controlling stockholders and the number of shares held by each.

(b)    A financial statement of each stockholder.

(c)    A copy of a proposed lease agreement with the city in which the new member will operate.

(d)    Plans for securing ballplayers and proposed player contracts.

(e)    A statement regarding the capitalization of the member.

(f)    A proposed operating budget for one season.

## ARTICLE IV.  MEETINGS

1.  The Annual Meeting of the League shall be following the playing season each year at such hour and place as the League Commissioner may determine.

2.  Each club shall bear the expense of its own representatives at such meetings.

## ARTICLE V.  OPERATING ACCOUNT

1.  All funds derived by the League from any source shall be combined in an account under the name of The Northern League and deposited in a bank designated by the Commissioner.  All expenses of the League shall be paid out of this account.  It is specifically excluded that these funds be a membership fee paid by each member when it shall become a full member.

2.  Each club shall remit and the Commissioner shall accept and deposit in this account each member's pro rata share of the League expenses as it may be determined from time to time by the Commissioner.

3.  Any club which shall fail to pay its assessment and its pro rata of the expenses within ten (10) days from notice of assessment shall be charged interest at the rate of 1 1/2% per month until such assessment is paid in full.

## ARTICLE VI.  PLAYING RULES

The playing rules shall be the official rules of organized baseball except as they may be changed in writing by the Commissioner of the League prior to the commencement of the season.

## ARTICLE VII.  LOGOS AND TRADEMARKS

The League shall have all right, title and interest in any logos, trademarks, service marks, souvenirs and other items bearing the League insignia.

## SALE OF NORTHERN LEAGUE MEMBERSHIPS

Article III., Section 5, Membership Assignment of the Northern League Constitution states that "The League has the authority to request in writing all facts and details of any proposed sale of membership herein, and if such request is made. the assignee and assignor shall furnish to the League such information before approval of the sale is considered."

The following information shall be requested:

1.      Percentage of ownership and brief biography of all proposed owners.  If the amount of stock exceeds 6%, the league shall request a personal financial statement of the investor or the statement from a CPA that the net worth of the potential investor exceeds $1 million. The league has the right to request further information and conduct a background check as necessary.

2.      A copy of the sales contract.

3.      A letter of credit for $150,000 or its equivalent as stated in Article III., Section 2 of the Constitution.

Ability to provide items 1-3 does not guarantee acceptance. Other factors such as business sense, financial stability and the ability to succeed in the Northern League will be considered. Character, reputation and the image that will be brought to the league are important. The Northern League is composed of eight equal partners, and a cooperative attitude and ability to work with the partners is important.

All information on proposed owners is submitted to the Financial Committee for review and to league members as requested.  Ownership change shall be voted on by the entire league and must be approved by a 2/3 vote of the members.  This vote should be taken at a regular league meeting but may be conducted by conference call at the discretion of the Financial Committee and League Commissioner.  If a special meeting is needed, expenses of the meeting shall be borne by the selling club.

In addition Article III., Section 10(a), provides that a 10% commission shall be paid to the league for a sale to a third party.

# NORTHERN LEAGUE
# EXPANSION RIGHTS AND
# STOCK PURCHASE AGREEMENT

This Expansion Rights and Stock Purchase Agreement (the "Agreement") is made this 8th day of February, 2005 between Jeffrey Eacle Gidney, on behalf of a corporate entity to be incorporated ("Purchaser") and The Northern League, Inc., a South Dakota corporation (the "League").

*     *     *

## RECITALS:

WHEREAS, the League is in the business of operating an independent minor league baseball league known as The Northern League;

WHEREAS, Purchaser desires to own and operate a professional baseball team in the League, and permanently situate that team in the city of Calgary, Alberta, Canada (the "Market");

WHEREAS, the League desires to expand its current geography to include the Market;

WHEREAS, the League has 25,000 shares of common stock authorized and 11,000 shares of common stock outstanding as of the date of this Agreement with each member team presently owning 1,000 shares of The Northern League, Inc. stock;

WHEREAS, the League owns and controls the rights of the League to expand into new geographic areas, as well as the rights to own and operate a baseball team that competes as a member of the Northern League pursuant to the constitution, rules and regulations of The Northern League, Inc. (the "Expansion Rights").

WHEREAS, the League is further willing to sell Expansion Rights in the Market to Purchaser and Purchaser desires to purchase such Expansion Rights;

WHEREAS, Purchaser acknowledges that the Market is situated in a location that necessitates that Purchaser make special travel accommodations for the League teams to travel to and from the Market;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby AGREE AS FOLLOWS:

1.    **PURCHASE OF STOCK.**   Subject to the terms herein, Purchaser agrees to purchase from the League and the League hereby agrees to sell to Purchaser 1,000 shares of common stock in the League (the "Stock") for the price of One Thousand Dollars ($1,000.00) (the "Stock Payment"). The Stock Payment shall be paid to the League at Closing. However, the stock shall be held in escrow by the League until the second installment of the Expansion Rights Payment is made to the League, as provided herein.

EXHIBIT
B

10/26/2007  07:13    4155993131    HIMELFARB PROSZANSKI    P. 7

PAGE  15/34

2.  **PURCHASE OF EXPANSION RIGHTS.** Subject to the terms herein, Purchaser further agrees to purchase from the League and the League hereby agree to sell to Purchaser the Expansion Rights to the Market for the price of Seven Hundred Ninety-Nine Thousand Dollars ($799,000) (the "Expansion Rights Payment"). The Expansion Rights Payment shall be paid to the League in two installments with $499,000 being paid at Closing, and the second payment of $300,000 being paid to the League on or before April 1, 2005.

3.  **TRAVEL EXPENSES.** Due to the isolated location of the Market, League teams will incur additional expenses in traveling via air to the Market for games. To help defray these expenses Purchaser will pay to the League the sum of $50,000.00 on or before April 15, 2005 to be used to defray airline travel costs of League teams. Thereafter, this travel subsidy in the amount of $50,000 will be paid annually by Purchaser to the League on or before April 1 of each year that Purchaser owns and operates a League team in the Market.

Additionally, Purchaser agrees to arrange reasonable transportation to and from the Market airport to the Market stadium for visiting teams, at Purchaser's sole expense, for so long as Purchaser owns and operates a League team in the Market.

4.  **OPERATING EXPENSES.** All expenses of owning and operating a team in the Market are the sole responsibility of Purchaser unless otherwise provided in the constitution or rules and regulations of the League.

5.  **REPRESENTATIONS OF PURCHASER.** Purchaser represents and warrants to the League that:

    A.  Purchaser is familiar with the business of operating a professional baseball team (the "Business") and the various risks associated with the Business;

    B.  With respect to the purchase of the Expansion Rights and the purchase of Stock, Purchaser (i) is not relying on the League for investment or operational advice in its decision to purchase either the Expansion Rights or the Stock; (ii) has carefully considered and discussed with its professional legal, tax, accounting, and financial advisors the suitability of an investment in the Expansion Rights and the Stock; and (iii) has substantial knowledge in financial and business matters applicable to the Business;

    C.  Purchaser has been given the opportunity to ask questions of and receive answers from the League concerning the Business, and the League's financial activities;

    D.  Purchaser has been given the opportunity to examine the League's financial statements; and

    E.  Purchaser has received all of the information and materials from the League that it has requested in connection with evaluating its investment in the Business.

F.    Purchaser has reviewed the constitution and rules and regulations of the Northern League and agrees to conduct its business in full compliance with these documents or any future amendments or additions thereto.

G.    All financial information regarding Purchaser and all ownership information regarding Purchaser, and the owners of Purchaser, that has been, or will be, provided to the League, by Purchaser, for review in connection with entering into this Agreement is true and correct.

6.   **REPRESENTATIONS OF THE LEAGUE.** The League represents and warrants to Purchaser that:

A.    The League has all the rights and authority required in order to execute and be bound by the terms and conditions of this Agreement;

B.    All 1,000 shares of Stock, when issued to Purchaser, shall be fully paid, non-assessable, and not subject to any prior tax or assessment; and

C.    The League is not a party to any agreement which would limit their ability to be bound by the terms and conditions of this Agreement.

7.   **LETTER OF CREDIT.** To ensure payment of Purchaser's obligations to the League, Purchaser shall deposit an unconditional and irrevocable letter of credit in the amount of $150,000 payable to the League in a bank approved by the League.

8.   **CHOICE OF LAW AND VENUE.** This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, and venue and jurisdiction of any dispute related to, or arising out of this Agreement, shall be in Fort Worth, Tarrant County, Texas.

9.   **ENTIRE AGREEMENT.** This Agreement contains the entire Agreement and understanding of the parties hereto, and supersedes all prior negotiations, understandings, and agreements, whether written or oral, with respect to its subject matter. There are no other written or oral agreements between the parties. This Agreement may only be modified by a subsequent written document signed by all parties that signed this Agreement.

10.   **SUCCESSORS AND ASSIGNS.** This Agreement is binding on and inures to the benefit of the parties to this Agreement and their respective successors and permitted assigns. This Agreement may not be assigned by Purchaser without the express written consent of the League.

11.   **AMENDMENTS.** This contract may be amended only in writing by the mutual consent of all parties evidenced by all necessary and proper corporate authority. No waiver of any provision of this contract shall arise from any action or inaction of any party except by an instrument in writing expressly waiving the provision executed by the party entitled to the benefit of the provision.

**Northern League Expansion Rights and Stock Purchase Agreement**          **Page 3 of 4**

12.  **CLOSING.** Closing of this contract as provided herein shall occur on or before February 2, 2005 at a time and place agreed upon by the parties.

13.  **FAILURE TO CLOSE.** In the event this contract is not closed by the Closing date set out in paragraph 12, then this contract shall terminate on and as of that date. Any termination shall not affect in any manner the rights and remedies that any party may have as the time of termination.

14.  **FAILURE OF PURCHASER TO COMPLETE EXPANSION RIGHTS PAYMENT.** If, after Closing, Purchaser fails to timely make the second installment of the Expansion Rights Payment, this agreement shall terminate and Purchaser will have no right, title or interest in the League or the Expansion Rights for the Market. The League will retain Purchaser's initial $500,000 Expansion Rights Payment as liquidated damages, and the parties shall have no further obligation to each other.

**IN WITNESS WHEREOF,** this Agreement is hereby executed by the undersigned as of the day and year first above written.

PURCHASER:                                    THE NORTHERN LEAGUE, INC.


By: _Jeffrey Smith Giddins on_                By: _____
Name: _behalf of a company to be_             Name: Mike Stone
Its: _incorporated_                           Its:   Commissioner


<Corporate League\Northern League Expansion Rights & Stock Purchase Agmt V1.doc>

**Northern League Expansion Rights and Stock Purchase Agreement**          **Page 4 of 4**



## NORTHERN LEAGUE, INC.

### EXPANSION RIGHTS AND STOCK PURCHASE AGREEMENT

This EXPANSION RIGHTS AND STOCK PURCHASE AGREEMENT, made the _____ day of _____, 2004, between and among P. DANIEL ORLICH (purchaser) and the NORTHERN LEAGUE, INC., a South Dakota Corporation (seller).

### RECITALS:

WHEREAS, PURCHASER desires to own and operate a professional baseball team in the Northern League in the City of Edmonton, Province of Alberta, Canada (the market) ; and

WHEREAS, SELLER desires the Northern League to expand its current geography to include the market requiring seller to grant purchaser the right to locate and operate its club in the market; and

WHEREAS, the capitalization of the seller includes twenty-five thousand (25,000) common shares authorized, ten thousand (10,000) issued and outstanding (no other classes authorized or issued); and

WHEREAS, the parties desire a team be located in the market beginning with the 2005 season; and

WHEREAS, the parties acknowledge the location of the market requires special travel accommodations for existing to and from the market;

NOW THEREFORE, for good and valuable consideration, the sufficiency of which is acknowledged, the parties hereto hereby agree as follows:

1. PURCHASE OF EXPANSION RIGHTS. Subject to the terms herein, the seller agrees to sell expansion rights to the purchaser for the market (including the customarily reserved exclusive territory) for the price of FIVE HUNDRED THOUSAND DOLLARS ($500,000 USD) (the "Expansion Rights payment"), in full on or before April 3, 2004. The expansion rights payment shall be paid to each of the ten (10) current shareholding teams equally, that is fifty thousand dollars ($50,000 USD) per shareholding team.

2. PURCHASE OF STOCK. Subject to the terms herein, seller shall issue one thousand (1,000) shares of Treasury stock of Northern League, Inc., fully paid and non-assessable to purchaser for the price of five hundred thousand dollars ($500,000 USD) (the "stock payment") in full on or before April 3,

EXHIBIT

C

2004. Seller acknowledges a good faith deposit of one hundred thousand ($100,000 USD), previously placed, is credited against the stock payment.

3. CLOSING. Upon receipt of both expansion rights and stock payments, that is as contemplated on April 3, 2004, the seller will issue 1) upon corporate books and by certificate, the stock consideration, fully paid and non-assessable; and 2) a corporate resolution admitting full and unlimited membership in the League and for the market, for play to begin the 2005 season. Henceforth, purchaser will be a full and equal member of the League with all the privileges and obligations except membership dues payments which shall begin with those applicable to the 2005 season.

4. TRAVEL. Purchaser agrees to pay on or before the annual Spring Meeting of the Board of Directors each and every year, the sum of fifty thousand dollars ($50,000 USD) to the League for distribution as the League sees fit, on behalf of travel expenses by League member teams for games played in the market. As is customary when teams travel by air the purchaser will will arrange and pay for necessary and reasonable ground transportation costs for visiting member teams and reasonable ground transportation expenses to and from the Edmonton, Alberta, ballpark.

5. ASSIGNMENT. This agreement may not be assigned by purchaser without the express written consent of the League; however, purchaser may, upon ten (10) days written notice, assign the expansion rights and stock ownership contemplated herein to an entity he owns and controls.

6. REPRESENTATIONS OF PURCHASER. Purchaser represents and warrants to the seller that:
   A. Purchaser is familiar with the business of operating a professional baseball team (the "business") and the various risks associated with the business;
   B. With respect to the purchase of the Expansion Rights and the purchase of Stock, purchaser (i) is not relying on the League or any existing team for investment or operational advice in its decision to purchase either the Expansion Rights or the Stock; (ii) has carefully considered and discussed with his professional, legal, tax, accounting and financial advisors the suitability of an investment in the Expansion Rights and Stock; and (iii) has substantial knowledge in financial and business matters applicable to the Business;
   C. Purchaser has been given the opportunity to ask questions of and receive answers from the Seller concerning the Business.

7. REPRESENTATIONS OF THE SELLER. Seller represents and warrants to the Purchaser that:
   A. Seller has all the rights and authority required in order to execute and be bound by the terms and conditions of this Agreement;

B. There is only one class of stock, common, and all one thousand (1,000) such shares, when issued, shall be fully paid, non-assessable and subject to no pre-emptive rights;

C. Seller is not a party to any agreement which would limit its ability to be bound by the terms and conditions of this Agreement;

D. The Northern League, Inc., is a duly organized corporation of the State of South Dakota, charter in good standing, party to no other proceedings or lawsuits other than such are attached as "Exhibit A";

E. The Balance Sheet and Statement of Profit and Loss, attached hereto as "Exhibit B" accurately depict the financial condition of the Northern League, Inc., as of the date hereof;

F. That no corporate, director or shareholder agreement exists which would limit the capacity of Seller to enter this agreement or which would diminish the ability of Purchaser to become and maintain a full, equal membership of the Northern League;

G. That no confidential or proprietary information exists which would influence the opportunity of purchaser to form an independent opinion of the economic value of the expansion rights and stock sale.

8. CHOICE OF LAW AND VENUE. This Agreement shall be governed by and construed in accordance with the laws of the United States jurisdiction expressed in the provision of the League Constitution that governs choice of law, jurisdiction, and venue, as same exists at the time any dispute may arise.

9. ENTIRE AGREEMENT. This Agreement contains the entire Agreement and understanding of the parties hereto, and supercedes all prior negotiations, understandings, and agreements, whether written or oral, with respect to its subject matter. This Agreement may only be modified by a subsequent written document signed by all parties that signed this Agreement.

WITNESS our hands and seal set this the _10th_ day of _April_, ~~2004~~. 2005

PURCHASER:

_____ (SEAL)
F. Daniel Orlich

SELLER:

NORTHERN LEAGUE, INC.

By _____ Commissioner
Michael H. Stone

Attest:

_____ (SEAL)

# Settlement and Mutual Release

Whereas, P. Daniel Orlich is the sole owner of Northern League in Edmonton, Inc. and has been since paying the required fees in the league in April 2004, and, whereas, he signed an agreement described as Northern League, Inc. Expansion Rights and Stock Purchase Agreement on behalf of his corporation that is dated April 10th, 2005. And,

Whereas, there is a dispute over the proper interpretation of the agreement, the substance of the negotiation leading to agreement's signing, and the execution of the contract by the parties to the agreement and that dispute has lead to protracted negotiations leading to a settlement of all matters relating to the negotiation, interpretation and execution of Mr. Orlich's company's agreement to play baseball as a member of the Northern League, which settlement is detailed below. The parties to the contract, being the Northern League Inc., a South Dakota Corporation, and the seven other teams that play baseball as part of the Northern League, Inc, who are listed below, and Mr. Orlich for the Edmonton Club, enter into this settlement and mutual release as of this 8th day of December, 2006.

## Settlement

As settlement of all claims relating to the negotiation, interpretation and execution of the Northern League. Inc. Expansion Rights and Stock Purchase Agreement, Fargo-Morehead, Gary, Joliet, Kansas City, Schaumburg and Winnipeg teams agree to pay $200,000 into the league treasury to be used as follows:

Payment to Edmonton: The league shall then pay $35,000 USD (thirty five thousand US dollars) as damages to Edmonton, to compensate it for revenue not received from the distribution of expansion revenues from the addition of the Calgary team to the league in 2004 and dues reduction for the 2005 season.

The remaining funds, totaling $165,000, shall remain in the league treasury to be used as a reserve fund that shall be used to pay league expenses on an ongoing basis as agreed to from time to time by the Directors.

Payment by Edmonton: Edmonton shall pay $50,000 as its contractually obligated travel subsidy to the league that was due at the beginning of the 2006 baseball season.

Timing of payments: The league's payment to Edmonton and Edmonton's payment to the league shall be made before December 15, 2006. The $165,000 shall be paid into the league incrementally as additions to league dues payments beginning with the second scheduled dues payment and continuing through the fourth scheduled dues payment during 2007. The amount of extra dues paid by each team other than Edmonton and Calgary shall be $9166.67, which shall be added to the periodic dues owed the league according to the schedule set by the leagues Directors.

## Mutual Release

Northern League in Edmonton, Inc. its owner and his wife, their heirs, other relatives, assigns, executives, employees, creditors, land lords, and anyone else related to or associated with that company or to P. Daniel Orlich shall release, hold harmless, and agree to indemnify the league, its owners, directors, officers, employees, vendors, licensees, and all others who may now and in the future have a relationship with the league regardless of its nature or purpose from any claim relating in any way to the negotiation, interpretation or execution of the Northern League, Inc. Expansion Rights and Stock Purchase Agreement of April 10, 2005 that describes the relationship between the league and Edmonton.

The League shall release and agree to indemnify Northern League in Edmonton, its owner, P. Daniel Orlich, his wife, heirs, other relatives, assigns, executives, employees, creditors, land lords, and anyone else related to or associated with that company from any claims that relate to the negotiation, interpretation, and execution of that certain contract as well.

Page 1 of 2 Mutual Release



Covenants: All parties agree that they have continuing obligations to each other and the league and that these obligations require that each follow the rules as described in the league's By Laws and Constitution and adheres to their agreements going forward and that this Settlement and Mutual Release cannot be asserted as a defense to future breaches of those agreements whether those agreements are with the league or others related to the operation of Northern League baseball teams.

It is essential to the operation of the league that this covenant be adhered to so that the members of the league can enjoy the benefits of mutual support that is essential to the successful operation of the league.

Executed on this 8th Day of December, 2006, at Orlando, Florida by:

_____
P. Daniel Orlich for Northern League in Edmonton, Inc.


_____
Jeff Gidney for the Calgary Vipers


_____
Bruce Thom for the Fargo Morehead Redhawks


_____
Mike Tatoian for the Gary South Shore Railcats


_____
John Costello for the Joliet Jackhammers


_____
John Ehlen for the Kansas City T-Bones


_____
Rich Ehrenreich for the Schaumberg Flyers


_____
Sam Katz for the Winnipeg Goldeyes


_____
James Weigel, for the Northern League


Page 2 of 2  Mutual Release

(SIGNATURES ATTACHED)
SCHAUMBURG
WINNIPEG
FARGO
KANSAS CITY
JOLIET
CALGARY
GARY EDMONTON

## AGREEMENT OF EIGHT (8)
## NORTHERN LEAGUE TEAMS

WHEREAS, The Northern League, Inc., has recently received notice from four (4) teams, St. Paul, Lincoln, Sioux City, and Sioux Falls, that they terminated their membership in The Northern League; and

WHEREAS, the remaining eight (8) teams of The Northern League, Fargo-Moorhead; Gary Southshore, Joliet, Kansas City, Schaumburg, Winnipeg, Edmonton, and Calgary (hereafter the "Teams"), desire to continue the business of The Northern League; and

WHEREAS, the Teams desire to enter into an agreement among themselves regarding the voluntary termination of any of the Teams from The Northern League, which agreement will be binding and enforceable on each of the Teams without regard to the terms and conditions of the Northern League Constitution or other corporate documents, and without regard to any legal decision or opinion that may be rendered at any time regarding legal status of The Northern League, Inc.; and

IT IS THEREFORE AGREED AS FOLLOWS:

1.      Any Team that voluntary terminates its membership in the Northern League for any reason shall reimburse the remaining Teams for all damages caused by such departure.  It is acknowledged that the exact amount of the damages suffered by the remaining Teams will be difficult to prove or ascertain, and therefore, the terminating Team shall pay to the remaining Teams., as liquidated damages the sum of $2,000,000 (USD) or the Current Membership Expansion Fee, which ever is greater.  This liquidated damage payment shall be made in equal shares to the remaining Teams, and it shall be made within seven (7) calendar days from the date the Termination Notice is submitted to The Northern League; and

-1-



EXHIBIT
E

2.    The terms and conditions of paragraph 1 immediately above may be altered or amended only by a unanimous vote of the Teams, or those remaining Teams in the event one or more of the Teams ceases to be a Member of The Northern League.

3.    This Agreement is effective as of October 7, 2005.

4.    This Agreement may be executed in multiple originals via facsimile signatures.

5.    This Agreement may be enforced against any Team, successor-in-interest, or new entity formed by the owners of a substantial amount of that Team's legal or equitable interests.

FARGO-MOORHEAD

By:_____

    Its:_____

GARY SOUTHSHORE

By: _____

    Its: _____

JOLIET

By:_____
    Its:_____

KANSAS CITY

By: _____
    Its: _____

SCHAUMBURG

By:_____
    Its:_____

WINNIPEG

By: _____
    Its: _____

EDMONTON

By:_____
    Its:_____

CALGARY

By: _____
    Its: _____

F:\Northern League\Corporate Docs\Northern Agreement.doc

-2-

ÐĪ□å¡±□á>□b¥
□□<□>□b¥¥¥:¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥¥
□ð□¿□□}□□hjbjŀFÍF □□/"Œ,Œ,Ⅰ □¥¥□¥¥□¥¥□ˉ æ æ æ æ æ æ □ú
ž□ž□ž□8Õ□ū□ò□ú ½–□□□(B□□X□X□X□X□X□X□X□X□`-□b-b-b-b-b-×.R□)lnb-
□æ X□X□X□XᵤX□b-æ æ X□X□w-□"□"□"□X□ □æ X□æ X□`-"□X□`-
ˉ"□˚□ŽÖ*˜"□æ æ ð+X□□□ ð˙;H.ÉÄ□ž□n□:→□D–□□-0½-¼+4—1ˉ□Š□—1 ð+ú ú æ⌐
æ æ æ —1æ ð+T□X□X□"□X□X□X□X□X□b-b-ú ú □□ž□2□xⒶú ú
ž□□□□AGREEMENT OF EIGHT (8) NORTHERN LEAGUE TEAMS WHEREAS,
The Northern League, Inc., has recently received notice from four (4) teams, St. Paul,
Lincoln, Sioux City, and Sioux Falls, that they terminated their membership in The
Northern League; and WHEREAS, the remaining eight (8) teams of The Northern
League, Fargo-Moorhead, Gary Southshore, Joliet, Kansas City, Schaumburg, Winnipeg,
Edmonton, and Calgary (hereafter the "Teams"), desire to continue the business of The
Northern League; and WHEREAS, the Teams desire to enter into an agreement among
themselves regarding the voluntary termination of any of the Teams from The Northern
League, which agreement will be binding and enforceable on each of the Teams without
regard to the terms and conditions of the Northern League Constitution or other corporate
documents, and without regard to any legal decision or opinion that may be rendered at
any time regarding legal status of The Northern League, Inc.; and IT IS THEREFORE
AGREED AS FOLLOWS; 1. Any Team that voluntary terminates its membership in the
Northern League for any reason shall reimburse the remaining Teams for all damages
caused by such departure. It is acknowledged that the exact amount of the damages
suffered by the remaining Teams will be difficult to prove or ascertain, and therefore, the
terminating Team shall pay to the remaining Teams, as liquidated damages the sum of
$2,000,000 (USD) or the Current Membership Expansion Fee, which ever is greater. This
liquidated damage payment shall be made in equal shares to the remaining Teams, and it
shall be made within seven (7) calendar days from the date the Termination Notice is
submitted to The Northern League; and 2. The terms and conditions of paragraph 1
immediately above may be altered or amended only by a unanimous vote of the Teams,
or those remaining Teams in the event one or more of the Teams ceases to be a Member
of The Northern League. 3. This Agreement is effective as of October 7, 2005. 4. This
Agreement may be executed in multiple originals via facsimile signatures. 5. This
Agreement may be enforced against any Team, successor-in-interest, or new entity
formed by the owners of a substantial amount of that Team's legal or equitable interests.
Fargo-Moorhead Gary Southshore By:_____ By:
_____ Its:_____ Its:
Joliet Kansas City By:_____ By:
_____ Its:_____ Its:
Schaumburg Winnipeg By:_____
By:_____ Its:_____ Its:
Edmonton Calgary By:_____ By:
_____ Its:_____ Its:
□ FILENAME \p □□ FILENAME \p □K:\Northern
League\Corporate Docs\Members Agreement.doc□ □ -□ PAGE □3□-

2.    The terms and conditions of paragraph 1 immediately above may be altered or amended only by a unanimous vote of the Teams, or those remaining Teams in the event one or more of the Teams ceases to be a Member of The Northern League.

3.    This Agreement is effective as of October 7, 2005.

4.    This Agreement may be executed in multiple originals via facsimile signatures.

5.    This Agreement may be enforced against any Team, successor-in-interest, or new entity formed by the owners of a substantial amount of that Team's legal or equitable interests.

FARGO-MOORHEAD

By:_____

Its:_____

GARY SOUTHSHORE

By:_____

Its:_____

JOLIET

By:_____

Its:_____

KANSAS CITY

By:_____

Its:_____

SCHAUMBURG

By:_____

Its:_____

WINNIPEG

By:_____

Its:_____

EDMONTON

By:_____

Its:    President

CALGARY

By:_____

Its:_____

-2-

EXHIBIT
2

2120 – Served                    2121 – Served
2220 – Not Served                2221 – Not Served
2320 – Served By Mail            2321 – Served By Mail
2420 – Served By Publication     2421 – Served By Publication
**SUMMONS**                      **ALIAS - SUMMONS**        CCG N001-10M-I-07-05 (                    )

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, ___CHANCERY___ DIVISION

(Name all parties)

The Northern League, Inc., Inc.

v.                                                          No.    07 CH 30842

Jeffrey Earl Gidney and P. Daniel Orlich

**SUMMONS**

To each Defendant:     P. Daniel Orlich
                       5150 North Ocean Drive #2001
                       Riviera Beach, FL 34106

**YOU ARE SUMMONED** and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑  Richard J. Daley Center, 50 W. Washington, Room __802__ , Chicago, Illinois 60602

☐  **District 2 – Skokie**          ☐  **District 3 – Rolling Meadows**      ☐  **District 4 – Maywood**
   5600 Old Orchard Rd.                2121 Euclid                              1500 Maybrook Ave.
   Skokie, IL 60077                    Rolling Meadows, IL 60008                Maywood, IL 60153

☐  **District 5 – Bridgeview**       ☐  **District 6 – Markham**              ☐  **Child Support**
   10220 S. 76th Ave.                  16501 S. Kedzie Pkwy.                    28 North Clark St., Room 200
   Bridgeview, IL 60455               Markham, IL 60426                        Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

**OCT 2 6 2007**

Atty. No.: 90747                                 WITNESS,_____

Name:  William I. Goldberg - Seyfarth Shaw LLP

Atty. for:  Plaintiff                            _____
                                                              **Clerk of Court**
Address:  131 S. Dearborn Street - Suite 2400

City/State/Zip:  Chicago, IL 60603               Date of service: _____
                                                 (To be inserted by officer on copy left with defendant
Telephone:  (312) 460-5919                                      or other person)

Service by Facsimile Transmission will be accepted at: _____
                                                         (Area Code)   (Facsimile Telephone Number)

### DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS



**EXHIBIT**

**2**

EXHIBIT
3

### Dorothy Brown

# Clerk of the
# Circuit Court
## Cook County

Case Information Summary for Case Number
2007-CH-30842

Filing Date: 10/25/2007
Division: Chancery Division
Ad Damnum: $0.00

Case Type: DECLARATORY JUDGEMENT
District: First Municipal
Calendar: 07

## Party Information

**Plaintiff(s)**
NORTHERN LEAGUE INC

**Attorney(s)**
SEYFARTH SHAW LLP
131 S DEARBORN#2400
CHICAGO IL, 60603
(312) 460-5000

**Date of Service**    **Defendant(s)**
GIDNEY JEFFREY E

**Attorney(s)**

ORLICH P D

## Case Activity

Activity Date: 10/25/2007                Participant: NORTHERN LEAGUE INC
DECLARATORY JUDGMENT COMPLAINT FILED

Court Fee: 294.00                Attorney: SEYFARTH SHAW LLP

Activity Date: 10/25/2007                Participant: NORTHERN LEAGUE INC
CASE SET ON CASE MANAGEMENT CALL

Court Date: 3/21/2008                Judge: EPSTEIN, JAMES R.
Court Time: 1000                Attorney: SEYFARTH SHAW LLP
Court Room: 2405



**EXHIBIT**

**3**

Please note: Neither the Circuit Court of Cook County nor the Clerk of the Circuit Court of Cook County warrants the accuracy, completeness, or the currency of this data. This data is not an official record of the Court or the Clerk and may not be represented as an official court record.

If data does not appear in a specific field, we likely do not have the responsive data in our master database.

Return to Search Page