# **EXHIBIT B**

NORTHERN LEAGUE
EXPANSION RIGHTS AND
STOCK PURCHASE AGREEMENT

This Expansion Rights and Stock Purchase Agreement (the "Agreement") is made this 8th day of February, 2005 between Jeffrey Earle Gidney, on behalf of a corporate entity to be incorporated ("Purchaser") and The Northern League, Inc., a South Dakota corporation (the "League").

RECITALS:

WHEREAS, the League is in the business of operating an independent minor league baseball league known as The Northern League;

WHEREAS, Purchaser desires to own and operate a professional baseball team in the League, and permanently situate that team in the city of Calgary, Alberta, Canada (the "Market");

WHEREAS, the League desires to expand its current geography to include the Market;

WHEREAS, the League has 25,000 shares of common stock authorized and 11,000 shares of common stock outstanding as of the date of this Agreement with each member team presently owning 1,000 shares of The Northern League, Inc. stock;

WHEREAS, the League owns and controls the rights of the League to expand into new geographic areas, as well as the rights to own and operate a baseball team that competes as a member of the Northern League pursuant to the constitution, rules and regulations of The Northern League, Inc. (the "Expansion Rights").

WHEREAS, the League is further willing to sell Expansion Rights in the Market to Purchaser and Purchaser desires to purchase such Expansion Rights;

WHEREAS, Purchaser acknowledges that the Market is situated in a location that necessitates that Purchaser make special travel accommodations for the League teams to travel to and from the Market;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby AGREE AS FOLLOWS:

1. **PURCHASE OF STOCK**. Subject to the terms herein, Purchaser agrees to purchase from the League and the League hereby agrees to sell to Purchaser 1,000 shares of common stock in the League (the "Stock") for the price of One Thousand Dollars ($1,000.00) (the "Stock Payment"). The Stock Payment shall be paid to the League at Closing. However, the stock shall be held in escrow by the League until the second installment of the Expansion Rights Payment is made to the League, as provided herein.

Northern League Expansion Rights and Stock Purchase Agreement                Page 1 of 4


EXHIBIT
B

2. **PURCHASE OF EXPANSION RIGHTS.** Subject to the terms herein, Purchaser further agrees to purchase from the League and the League hereby agrees to sell to Purchaser the Expansion Rights to the Market for the price of Seven Hundred Ninety-Nine Thousand Dollars ($799,000) (the "Expansion Rights Payment"). The Expansion Rights Payment shall be paid to the League in two installments with $499,000 being paid at Closing, and the second payment of $300,000 being paid to the League on or before April 1, 2005.

3. **TRAVEL EXPENSES.** Due to the isolated location of the Market, League teams will incur additional expenses in traveling via air to the Market for games. To help defray these expenses Purchaser will pay to the League the sum of $50,000.00 on or before April 15, 2005 to be used to defray airline travel costs of League teams. Thereafter, this travel subsidy in the amount of $50,000 will be paid annually by Purchaser to the League on or before April 1 of each year that Purchaser owns and operates a League team in the Market.

   Additionally, Purchaser agrees to arrange reasonable transportation to and from the Market airport to the Market stadium for visiting teams, at Purchaser's sole expense, for so long as Purchaser owns and operates a League team in the Market.

4. **OPERATING EXPENSES.** All expenses of owning and operating a team in the Market are the sole responsibility of Purchaser unless otherwise provided in the constitution or rules and regulations of the League.

5. **REPRESENTATIONS OF PURCHASER.** Purchaser represents and warrants to the League that:

   A. Purchaser is familiar with the business of operating a professional baseball team (the "Business") and the various risks associated with the Business;

   B. With respect to the purchase of the Expansion Rights and the purchase of Stock, Purchaser (i) is not relying on the League for investment or operational advice in its decision to purchase either the Expansion Rights or the Stock; (ii) has carefully considered and discussed with its professional legal, tax, accounting, and financial advisors the suitability of an investment in the Expansion Rights and the Stock; and (iii) has substantial knowledge in financial and business matters applicable to the Business;

   C. Purchaser has been given the opportunity to ask questions of and receive answers from the League concerning the Business, and the League's financial activities;

   D. Purchaser has been given the opportunity to examine the League's financial statements; and

   E. Purchaser has received all of the information and materials from the League that it has requested in connection with evaluating its investment in the Business.

Northern League Expansion Rights and Stock Purchase Agreement          Page 2 of 4

F. Purchaser has reviewed the constitution and rules and regulations of the Northern League and agrees to conduct its business in full compliance with these documents or any future amendments or additions thereto.

G. All financial information regarding Purchaser and all ownership information regarding Purchaser, and the owners of Purchaser, that has been, or will be, provided to the League, by Purchaser, for review in connection with entering into this Agreement is true and correct.

6. **REPRESENTATIONS OF THE LEAGUE.** The League represents and warrants to Purchaser that:

   A. The League has all the rights and authority required in order to execute and be bound by the terms and conditions of this Agreement;

   B. All 1,000 shares of Stock, when issued to Purchaser, shall be fully paid, non-assessable, and not subject to any prior tax or assessment; and

   C. The League is not a party to any agreement which would limit their ability to be bound by the terms and conditions of this Agreement.

7. **LETTER OF CREDIT.** To ensure payment of Purchaser's obligations to the League, Purchaser shall deposit an unconditional and irrevocable letter of credit in the amount of $150,000 payable to the League in a bank approved by the League.

8. **CHOICE OF LAW AND VENUE.** This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, and venue and jurisdiction of any dispute related to, or arising out of this Agreement, shall be in Fort Worth, Tarrant County, Texas.

9. **ENTIRE AGREEMENT.** This Agreement contains the entire Agreement and understanding of the parties hereto, and supersedes all prior negotiations, understandings, and agreements, whether written or oral, with respect to its subject matter. There are no other written or oral agreements between the parties. This Agreement may only be modified by a subsequent written document signed by all parties that signed this Agreement.

10. **SUCCESSORS AND ASSIGNS.** This Agreement is binding on and inures to the benefit of the parties to this Agreement and their respective successors and permitted assigns. This Agreement may not be assigned by Purchaser without the express written consent of the League.

11. **AMENDMENTS.** This contract may be amended only in writing by the mutual consent of all parties evidenced by all necessary and proper corporate authority. No waiver of any provision of this contract shall arise from any action or inaction of any party except by an instrument in writing expressly waiving the provision executed by the party entitled to the benefit of the provision.

12. **CLOSING.** Closing of this contract as provided herein shall occur on or before February 2, 2005 at a time and place agreed upon by the parties.

13. **FAILURE TO CLOSE.** In the event this contract is not closed by the Closing date set out in paragraph 12, then this contract shall terminate on and as of that date. Any termination shall not affect in any manner the rights and remedies that any party may have as the time of termination.

14. **FAILURE OF PURCHASER TO COMPLETE EXPANSION RIGHTS PAYMENT.** If, after Closing, Purchaser fails to timely make the second installment of the Expansion Rights Payment, this agreement shall terminate and Purchaser will have no right, title or interest in the League or its Expansion Rights for the Market. The League will retain Purchaser's initial $500,000 Expansion Rights Payment as liquidated damages, and the parties shall have no further obligation to each other.

IN WITNESS WHEREOF, this Agreement is hereby executed by the undersigned as of the day and year first above written.

PURCHASER:                                  THE NORTHERN LEAGUE, INC.

By: _Jeremy Greer Gideon_                   By: _Mike Stone_
Name: _Behalf of a company to be_           Name: Mike Stone
Its: _(incorporated)_                       Its: Commissioner

Northern League Expansion Rights and Stock Purchase Agreement          Page 4 of 4

