# EXHIBIT C

NORTHERN LEAGUE, INC.

EXPANSION RIGHTS AND STOCK PURCHASE AGREEMENT

The EXPANSION RIGHTS AND STOCK PURCHASE AGREEMENT, made the ___ day of _____, 2004, between and among P. DANIEL ORLICK (purchaser) and the NORTHERN LEAGUE, INC., a South Dakota Corporation (seller).

RECITALS:

WHEREAS, PURCHASER desires to own and operate a professional baseball team in the Northern League in the City of Edmonton, Province of Alberta, Canada (the market); and

WHEREAS, SELLER desires the Northern League to expand its current geography to include the market requiring seller to grant purchaser the right to locate and operate its club in the market; and

WHEREAS, the capitalization of the seller includes twenty-five thousand (25,000) common shares authorized, ten thousand (10,000) issued and outstanding (no other classes authorized or issued); and

WHEREAS, the parties desire a team be located in the market beginning with the 2005 season; and

WHEREAS, the parties acknowledge the location of the market requires special travel accommodations for existing to and from the market;

NOW THEREFORE, for good and valuable consideration, the sufficiency of which is acknowledged, the parties hereto hereby agree as follows:

1. PURCHASE OF EXPANSION RIGHTS. Subject to the terms herein, the seller agrees to sell expansion rights to the purchaser for the market (including the customarily reserved exclusive territory) for the price of FIVE HUNDRED THOUSAND DOLLARS ($500,000 USD) (the "Expansion Rights payment"), in full on or before April 3, 2004. The expansion rights payment shall be paid to each of the ten (10) current shareholding teams equally, that is fifty thousand dollars ($50,000 USD) per shareholding team.

2. PURCHASE OF STOCK. Subject to the terms herein, seller shall issue one thousand (1,000) shares of Treasury stock of Northern League, Inc., fully paid and non-assessable to purchaser for the price of five hundred thousand dollars ($500,000 USD) (the "stock payment") in full on or before April 3,

EXHIBIT C

2004. Seller acknowledges a good faith deposit of one hundred thousand ($100,000 USD), previously placed, is credited against the stock payment.

3. CLOSING. Upon receipt of both expansion rights and stock payments, that is as contemplated on April 3, 2004, the seller will issue 1) upon corporate books and by certificate, the stock consideration, fully paid and non-assessable; and 2) a corporate resolution admitting full and unlimited membership in the League and for the market, for play to begin the 2005 season. Henceforth, purchaser will be a full and equal member of the League with all the privileges and obligations except membership dues payments which shall begin with those applicable to the 2005 season.

4. TRAVEL. Purchaser agrees to pay on or before the annual Spring Meeting of the Board of Directors each and every year, the sum of fifty thousand dollars ($50,000 USD) to the League for distribution as the League sees fit, on behalf of travel expenses by League member teams for games played in the market. As is customary when teams travel by air the purchaser will will arrange and pay for necessary and reasonable ground transportation costs for visiting member teams and reasonable ground transportation expenses to and from the Edmonton, Alberta, ballpark.

5. ASSIGNMENT. This agreement may not be assigned by purchaser without the express written consent of the League; however, purchaser may, upon ten (10) days written notice, assign the expansion rights and stock ownership contemplated herein to an entity he owns and controls.

6. REPRESENTATIONS OF PURCHASER. Purchaser represents and warrants to the seller that:
   A. Purchaser is familiar with the business of operating a professional baseball team (the "business") and the various risks associated with the business;
   B. With respect to the purchase of the Expansion Rights and the purchase of Stock, purchaser (i) is not relying on the League or any existing team for investment or operational advice in its decision to purchase either the Expansion Rights or the Stock; (ii) has carefully considered and discussed with his professional, legal, tax, accounting and financial advisors the suitability of an investment in the Expansion Rights and Stock; and (iii) has substantial knowledge in financial and business matters applicable to the Business;
   C. Purchaser has been given the opportunity to ask questions of and receive answers from the Seller concerning the Business.

7. REPRESENTATIONS OF THE SELLER. Seller represents and warrants to the Purchaser that:
   A. Seller has all the rights and authority required in order to execute and be bound by the terms and conditions of this Agreement;

B. There is only one class of stock, common, and all one thousand (1,000) such shares, when issued, shall be fully paid, non-assessable and subject to no pre-emptive rights;

C. Seller is not a party to any agreement which would limit its ability to be bound by the terms and conditions of this Agreement;

D. The Northern League, Inc., is a duly organized corporation of the State of South Dakota, charter in good standing, party to no other proceedings or lawsuits other than such are attached as "Exhibit A";

E. The Balance Sheet and Statement of Profit and Loss, attached hereto as "Exhibit B" accurately depict the financial condition of the Northern League, Inc., as of the date hereof;

F. That no corporate, director or shareholder agreement exists which would limit the capacity of Seller to enter this agreement or which would diminish the ability of Purchaser to become and maintain a full, equal membership of the Northern League;

G. That no confidential or proprietary information exists which would influence the opportunity of purchaser to form an independent opinion of the economic value of the expansion rights and stock sale.

8. CHOICE OF LAW AND VENUE. This Agreement shall be governed by and construed in accordance with the laws of the United States jurisdiction expressed in the provision of the League Constitution that governs choice of law, jurisdiction, and venue, as same exists at the time any dispute may arise.

9. ENTIRE AGREEMENT. This Agreement contains the entire Agreement and understanding of the parties hereto, and supersedes all prior negotiations, understandings, and agreements, whether written or oral, with respect to its subject matter. This Agreement may only be modified by a subsequent written document signed by all parties that signed this Agreement.

WITNESS our hands and seal set this the _10th_ day of _April_, 2004. 2005

PURCHASER:

_____(SEAL)
P. Daniel Orlich

SELLER:

NORTHERN LEAGUE, INC.

By _[signature]_ Commissioner
Michael H. Stone

Attest:

_[signature]_ (SEAL)