IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE NORTHERN LEAGUE, INC., JOLIET PROFESSIONAL BASEBALL CLUB, LLC, SCHAUMBURG PROFESSIONAL BASEBALL LLC, FARGO BASEBALL, LLC, SOUTHSHORE BASEBALL, LLC, KANSAS CITY T-BONES, LLC and WINNIPEG GOLDEYES BASEBALL CLUB, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>JEFFREY EARL GIDNEY, and P. DANIEL ORLICH, J. E. GIDNEY HOLDINGS, INC. and THE NORTHERN LEAGUE IN EDMONTON, INC.<br><br>Defendants. | No.: 07 C 6585<br><br>Judge Der-Yeghiayan<br>Magistrate Judge Mason |

## AMENDED COMPLAINT

Plaintiffs, The Northern League, Inc., Joliet Professional Baseball Club, LLC, Schaumburg Professional Baseball LLC, Fargo Baseball, LLC, Southshore Baseball, LLC, Kansas City T-Bones, LLC and Winnipeg Goldeyes Baseball Club, Inc. by their attorneys, William I. Goldberg and P. Shawn Wood, Seyfarth Shaw LLP, allege the following as their Amended Complaint against Defendants, Jeffrey Earl Gidney, P. Daniel Orlich, J. E. Gidney Holdings, Inc. and The Northern League in Edmonton, Inc.

### ALLEGATIONS COMMON TO ALL COUNTS

#### Nature of the Case

1. The Northern League is in the business of operating an independent baseball league. The Northern League consisted of eight teams prior to the Fall of 2007, when the teams

owned by defendants Gidney and Orlich, the Calgary Vipers and the Edmonton Cracker-Cats, respectively each voluntarily terminated its membership in the League. After those teams voluntarily terminated their membership with the League, the League now consists of six teams, all of which are plaintiffs. Plaintiffs seek relief under agreements with the defendants relating to the operation of the Northern League.

## The Parties

2. Plaintiff The Northern League is a South Dakota corporation organized in February, 1992. Its principal place of business is Minneapolis, Minnesota.

3. Plaintiff Joliet Professional Baseball Club LLC ("Joliet") is an Illinois limited liability company that owns and operates the Joliet Jackhammers, the Northern League team in Joliet, Illinois. Its principal place of business is Joliet, Illinois.

4. Plaintiff Schaumburg Professional Baseball LLC ("Schaumburg") is an Illinois limited liability company that owns and operates the Schaumburg Flyers, the Northern League team in Schaumburg, Illinois. Its principal place of business is Schaumburg, Illinois.

5. Plaintiff Southshore Baseball, LLC ("Gary") is an Indiana limited liability corporation that owns and operates the Gary Southshore Railcats, the Northern League team in Gary, Indiana. Its principal place of business is Gary, Indiana.

6. Plaintiff Fargo Baseball, LLC ("Fargo") is a Minnesota limited liability company that owns and operates, the Fargo-Moorhead Red Hawks, the Northern League team in Fargo, North Dakota. Its principal place of business is Fargo, North Dakota.

7. Plaintiff Kansas City T-Bones, LLC ("Kansas City") is a Kansas limited liability company that owns and operates the Kansas City T-Bones, the Northern League team in Kansas City, Kansas. Its principal place of business is Kansas City, Kansas.

8. Plaintiff Winnipeg Goldeyes Baseball Club, Inc. ("Winnipeg") is a Canadian corporation that owns and operates the Winnipeg Goldeyes, the Northern League team in Winnipeg, Canada. Its principal place of business is Winnipeg, Canada.

9. Plaintiffs Joliet, Schaumburg, Gary, Fargo, Kansas City and Winnipeg are herein referred to collectively as "Plaintiff Teams".

10. Defendant Gidney ("Gidney") is a citizen of Canada.

11. Gidney owns and controls Defendant J. Gidney Holdings, Inc., a Canadian corporation, with its principal place of business in Calgary, Canada, which owned and operated the Calgary Vipers ("Calgary") as a member of The Northern League during 2005, 2006 and 2007 seasons. Gidney and J. Gidney Holdings are referred to collectively as the "Calgary Defendants."

12. Defendant P. Daniel Orlich is a citizen of Canada.

13. Orlich owns and controls The Northern League in Edmonton, Inc., a Florida corporation, with its principal place of business in Edmonton, Canada, which owned and operated The Edmonton Cracker-Cats ("Edmonton") as a member of The Northern League during the 2005, 2006 and 2007 seasons. Orlich and The Northern League in Edmonton, Inc. are referred to collectively as the "Edmonton Defendants."

14. Calgary and Edmonton are herein referred to collectively as the "Defendant Teams".

### Jurisdiction and Venue

15. Jurisdiction is proper on the ground of diversity of citizenship under 28 U.S.C. §1332.

16. Venue is proper in this District under 28 U.S.C. §1391(a).

3

CH3 1127286.3

## COUNT I

### Enforcement of Agreement of Eight Northern League Teams

17. Paragraphs 1 to 16 of the Allegations Common to All Counts are incorporated by reference as Paragraph 17 of Count I.

18. In a Northern League Expansion Rights and Stock Purchase Agreement dated February 8, 2005 (Exhibit A hereto), The Northern League and defendant Gidney, "on behalf of a corporate entity to be incorporated ('Purchaser')" entered into an Agreement reciting that:

> Purchaser desires to own and operate a professional baseball team in the League and permanently situate that team in the city of Calgary, Alberta, Canada (the "Market").

Pursuant to the Agreement, Gidney purchased expansion rights to the Calgary Market and one thousand shares of treasury stock of the Northern League as nominal representation of Gidney's membership in the League.

19. In an Expansion Rights and Stock Purchase Agreement dated April 10, 2005 (Exhibit B hereto), P. Daniel Orlich, as Purchaser, and The Northern League entered into an Agreement reciting that the Purchaser desires to own and operate a professional baseball team in Edmonton and the parties desire that a team be located in the Edmonton Market beginning with the 2005 season.

20. Calgary and Edmonton participated in the 2005 season. At that time, the Northern League consisted of 12 teams.

21. In October 2005 at the conclusion of the 2005 season, four Northern League teams provided notice that they were terminating their membership in The Northern League. The eight remaining teams, including Calgary and Edmonton, then entered into an agreement providing for liquidated damages in the sum of Two Million Dollars ($2,000,000) or the current

4

membership expansion fee, whichever is greater, to be paid to the remaining teams equally by any team which voluntarily leaves the League. (Exhibit C).

22.  Before the conclusion of the 2007 season, defendants Gidney and Orlich each made repeated statements in the press and in oral and written communications with the League and members of the League indicating that Calgary and Edmonton intended to withdraw from the League and not conduct play in the League in 2008. Further, despite repeated attempts by the League and other members to verify that the Calgary and Edmonton teams intended to play in 2008 in the Northern League, the defendants failed to provide adequate assurances of their intention to participate in and fulfill the 2008 schedule which was being prepared.

23.  Following the conclusion of the season, the League and the plaintiff teams of the League proposed that the Defendant Teams each provide a letter of credit to assure performance of their respective obligations to play in 2008 and to secure a portion of the loss which the teams and The Northern League would suffer if either of the Defendant Teams failed to perform the 2008 schedule.

24.  These arrangements were discussed and modified in meetings on October 4 and 5, 2007. However, defendants left the meetings and never accepted or responded to the proposals.

25.  On or about October 15, 2007, an attorney for the defendants advised an attorney for the League that the Calgary and Edmonton teams should not be included in the 2008 season schedule.

26.  On or about October 23, 2007 defendant Gidney announced at a press conference that he was moving his Calgary Vipers to the Golden League, another independent league.

27.  On or about October 24, 2007, Orlich announced in a press release that the Edmonton Cracker-Cats had joined the Golden League.

5

CH3 1127286.3

28. By reason of the conduct alleged above, the Calgary and Edmonton teams each voluntarily terminated its relationship with The Northern League.

29. The amount of $2,000,000 is greater than the current membership expansion fees. Therefore, pursuant to the terms of the Agreement of Eight, the Defendant Teams are each obligated to pay the other six teams the sum of $2,000,000 ($333,333.33 to each Plaintiff Team from each Defendant Team).

30. Defendants have failed and refused to make the payments they are obligated to make under the Agreement of Eight Northern League Teams.

31. By reason of defendants' failure, the Plaintiff Teams have been damaged. Plaintiff Teams and each of them are entitled to enforce the Agreement of Eight.

WHEREFORE, each of the Plaintiff Teams pray that the Court:

a) Enter judgment against defendants Gidney and Gidney Holdings in the amount of Two Million Dollars ($2,000,000), with one-sixth ($333,333.33) of such judgment being in favor of each Plaintiff Team;

b) Enter judgment against Orlich and The Northern League in Edmonton in the amount of Two Million Dollars ($2,000,000), with one-sixth ($333,333.33) of such judgment being in favor of each Plaintiff Team;

c) Award pre-judgment and post-judgment interest;

d) Award costs; and

e) Grant such other and further relief as the Court deems appropriate.

## COUNT II

### Other Damage Claims Against The Edmonton Defendants

32. Paragraphs 1 to 16 of the Allegations Common to All Counts are incorporated by reference as Paragraph 32 of Count II.

6

CH3 1127286.3

33. During 2004, Orlich began discussions with the League, participated in discussions with other members of the League concerning League business and made initial payments to the League. Orlich signed the Expansion Rights and Stock Purchase Agreement dated April 10, 2005 (Exhibit B hereto). Pursuant to the Agreement, Orlich, purchased expansion rights to the Edmonton Market and one thousand shares of treasury stock of the Northern League as nominal representation of Orlich's membership in the League.

34. In the Agreement, the parties acknowledged that the location of the market requires "special travel accommodations". Consequently in Paragraph 4, Orlich agreed to pay Fifty Thousand Dollars ($50,000) annually before the annual Spring meeting to the League for distribution as the League sees fit, and Orlich also agreed to arrange and pay for necessary and reasonable ground transportation costs for visiting team members.

35. In a Settlement and Mutual Release between Orlich (the sole owner of the Northern League in Edmonton, Inc.), the Northern League and the members of the League (Exhibit D), the parties resolved disputes over the proper interpretation of the Northern League Expansion Rights and Stock Purchase Agreement. (Exhibit B).

36. In that Settlement, Orlich and the Northern League agreed to follow the rules as described in the League's By Laws and Constitution. Specifically, the settlement provides:

> Covenants: All parties agree that they have continuing obligations to each other and the league and that these obligations require that each follow the rules as described in the league's By Laws and Constitution and adheres to their agreements going forward and that this Settlement and Mutual release cannot be asserted as a defense to future breaches of those agreements whether those agreements are with the league or others related to the operation of Northern League baseball teams.
>
> It is essential to the operation of the league that this covenant be adhered to so that the members of the league can enjoy the beneficiaries of mutual support that is essential to the successful operation of the league.

7

CH3 1127286.3

37.     Pursuant to its agreements with the League and the other members of the League, the Edmonton Defendants were obligated to pay the League Fifty Thousand Dollars ($50,000) as a travel subsidy for 2005, 2006 and 2007. The Edmonton Defendants paid the travel subsidy for 2005 and 2006 but failed to make that payment for 2007.

38.     By reason of the failure of the Edmonton Defendants to make the payments of Fifty Thousand Dollars ($50,000), the League has been damaged.

WHEREFORE, the plaintiffs pray that the court:

a)   Enter judgment against the Edmonton Defendants and in favor of The Northern League for Fifty Thousand Dollars ($50,000);

b)   Award pre-judgment interest and post judgment interest;

c)   Award costs; and

d)   Grant such other and further relief as the Court deems appropriate.

## COUNT III

### Other Damage Claims Against The Calgary Defendants

39.     Paragraph 1 to 16 of the Allegations Common to All Counts are realleged as Paragraph 39 of Count III.

40.     Paragraph 5(f) of the Northern League Expansion Rights and Stock Purchase Agreement (Exhibit A) provides "Purchaser has reviewed the constitution and rules and regulations of The Northern League and agrees to conduct its business in full compliance with these documents or any future amendments or additions thereto."

41.     The Rules of the Northern League provide that a play-off team is obligated to increase ticket prices by $1.00 or more for home play-off games, and pay to the League $1.00 for each play-off ticket sold. Under that rule, the Calgary Defendants owe the League Nine Thousand Seven Hundred Forty-Seven Dollars ($9,747) for 2007 play-off games. The Calgary

CH3 1127286.3

Defendants have not disputed that they owe this per ticket amount, but has refused to pay it to the League.

42. At all relevant times, the teams have recognized that the Commissioner has the power to take actions, including the imposition of fines, if a team official takes action not in the best interests of the League. Pursuant to this policy and practice, in 2007, the Commissioner imposed fines totaling Fifteen Thousand Dollars ($15,000) on the Calgary Defendants by reason of the negative statements of its general manager, Peter Young. The amount of the fines was consistent with past practice. The Calgary Defendants did not dispute the fines, but they have refused to pay the fines.

43. By reason of the failure and refusal of the Calgary Defendants to pay the play-off per ticket fees and the fines relating to the conduct of Peter Young, the Calgary Defendants owe the League Twenty Four Thousand Seven Hundred Forty-Seven Dollars ($24,747). These payments were due in September 2007.

44. By reason of the failure of said defendants to pay any such amounts, the League has been damaged.

WHEREFORE, the League prays that the Court:

    a) Enter judgment in its favor against defendants Gidney and Gidney Holdings in the amount of Twenty Four Thousand Seven Hundred Forty-Seven Dollars ($24,747);

    b) Award pre-judgment and post judgment interest;

    c) Award costs;

    d) Grant such other and further relief as the Court deems appropriate.

CH3 1127286.3

## COUNT IV

### Claims for Equitable Relief Against All Defendants

45. Paragraphs 1 to 16 of the Allegations Common to All Counts are realleged as Paragraph 45 of Count IV as set forth herein.

46. The Northern League Constitution (Exhibit E) contains provisions governing termination of membership in the League. Paragraph 4 of the constitution provides that in the event of voluntary termination of membership, title to all players on the roster of the terminating club shall rest in the League from the date of notice of termination.

47. Paragraphs 6 and 7 of the Constitution provide for termination of membership for "failure to pay any all financial indebtedness owed and due by a member club (Paragraph 6(b)); for "failing or refusing to fulfill its contract obligations". (Paragraph 7(e); or for "willfully violating any provisions of this constitution", Paragraph 7(f)).

48. By reason of their conduct as alleged in paragraphs 18 through 28 of Count I, the Defendant Teams each voluntarily terminated their membership in the Northern League.

49. By reason of the conduct of each of the Defendant Teams in leaving The Northern League and joining The Golden League, the defendants have violated the territorial expansion agreements with The Northern League and the members of The Northern League. (Exhibits A and B hereto).

50. Such action is continuing and has caused and threatens to continue to cause irreparable injury to The Northern League and the members of The Northern League.

WHEREFORE, plaintiffs ask that the court:

    a) Enjoin Defendants from operating teams in either the Calgary Market or the Edmonton Market associated with The Golden League;

b) To enforce the Constitution, direct each defendant to turn over to the League its right to operate a team in the area in which it operated a Northern League team and turn over the players contracts, team names, logos, all other intellectual property and trademarks relating to each team to The League;

c) Surrender their stock in the League; and

d) Grant such other and further relief as the Court deems appropriate.

DATED: February 25, 2008

Respectfully submitted,

SEYFARTH SHAW LLP

By: /s/ William I. Goldberg
One of Its Attorneys

William I. Goldberg (wgoldberg@seyfarth.com)
P. Shawn Wood (swood@seyfarth.com)
Seyfarth Shaw LLP
131 S. Dearborn Street – Suite 2400
Chicago, IL 60603-5577
(312) 460-5000
Fax: (312) 460-7000

11

CH3 1127286.3

## CERTIFICATE OF SERVICE

  I hereby certify that I caused the foregoing AMENDED COMPLAINT to be served via the Court's electronic noticing system upon the following individuals on this 25th day of February, 2008:

    Andrew T. Staes (andrewstaes@covad.net)
    Stephen D. Scallan (stevescallan@covad.net)
    Joshua J. Whiteside (joshwhiteside@staesandscallan.com)
    Staes & Scallan P.C.
    111 W. Washington St., Ste. 1631
    Chicago, IL 60602


            s/William I. Goldberg